KRAMER ET AL. *v.* STANDING PINE DRAINAGE DISTRICT.

[78 South. 5, Division B.]

DRAINS. *Abandonment of project. Expenses. Tax.*

Under Laws 1912, chapter 197, section 52, so expressly providing where the establishment of a drainage district was abandoned and allowances were made and certificates issued by the board of drainage commissioners for their own services and for publication legal, and engineering services, the board of supervisors must levy a tax to cover such certificates.

APPEAL from the circuit court of Leake county. HON. J. D. CARR, Judge.

Proceedings by X. A. Kramer and others to have a tax levied against the property within the Standing Pine Drainage District. From a judgment of the circuit court sustaining a refusal of the board of supervisors to levy a tax and denying the relief prayed for, the petitioners appeal.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson, Fulton Thompson* and *O. A. Luckett,* for appellants.

*J. L. McMillon,* for appellee.

STEVENS, J., delivered the opinion of the court.

The record of this appeal shows an abortive effort to establish under chapter 197, Laws of 1912, a drainage district to be known as the "Standing Pine Drainage District" in Leake county. It affirmatively appears that more than ten percentum of the landowners of the proposed district, in number, acreage, and value, petitioned for the organization of the district in accordance with the purposes of the statute, that the petition described the territory to be embraced, gave a list of the names and post office addresses of the landowners, and otherwise complied with the law. The chancery clerk, on receiving this petition, notified the chancellor of the district, and the chancellor rendered a decree, appointing county drainage commissioners. The county commissioners met and organized, and, in taking the necessary steps for the organization of the district, elected an engineer and an attorney, as authorized by the statute, and incurred other legitimate items of expense. Mr. Kramer was selected as an engineer to survey out and make profiles and maps of the district, and his compensation was fixed at twelve cents an acre. District drainage commissioners were selected. Before the district was finally organized, many of the landowners concerned protested and petitioned against the formation of the district, and finally the project was abandoned altogether. The county board of commissioners at their regular meetings made specific allowances as follows:

"R. P. Wright, county drainage commissioner, eight days, five dollars a day, forty dollars.

"J. M. Scott, county drainage commissioner, three days, five dollars a day, fifteen dollars.

"W. L. Lyell, county drainage commissioner, four days, five dollars a day, twenty dollars.

"J. C. Majure, county drainage commissioner, four days, five dollars a day, twenty dollars.

"Tom Hardage district drainage commissioner, twenty-two days, five dollars a day, one hundred and ten dollars.

"M. O. Wright, district drainage commissioner, five days, five dollars a day, twenty-five dollars.

"J. R. Shepherd, twenty-six days, five dollars a day, one hundred and thirty dollars.

"O. A. Luckett, county attorney, for services rendered to the commissioners, three hundred dollars.

"N. F. Wallace, clerk for the drainage commission, fifty dollars.

"N. F. Wallace, for money paid out for buying books, etc., for nonresident landowners, three dollars.

"To the Carthagenian, a newspaper, for publication notices, twenty-five dollars and fifty cents.

"X. A. Kramer, for preliminary survey, map and profile report as per contract, three thousand four hundred and forty-five acres at twelve cents an acre, four hundred and thirteen dollars."

Certificates of indebtedness, duly signed by the president of the board and countersigned by the clerk, with the seal of the board attached, were delivered to the parties to whom these allowances were made, and thereafter the clerk presented to the board of supervisors of Leake county a certified copy of the orders of the county board of drainage commissioners, and the board of supervisors were asked to levy a tax upon the land of the district sufficient to pay or liquidate these certificates of indebtedness. This proceeding before the board of supervisors was in accordance with section 52 of the statute in question, and that portion of the statute pertinent to this inquiry is as follows:

"And in the event the said district is not organized after the indebtedness is incurred, the county board

of drainage commissioners shall furnish the board of supervisors of the county . . . in which the lands . . . are situated with the amount of such certificates of indebtedness, and the said board of supervisors shall levy an acreage tax or levy an *ad valorem* tax against the land in said proposed district to pay said certificates of indebtedness, and the said assessment of taxes, when so made by the board of supervisors, shall be a lien on all of the lands against which they are assessed until the taxes are paid or the lands sold for the nonpayment thereof as other lands for the nonpayment of county and state tax."

The board declined to levy the tax, bill of exceptions was duly tendered and signed, and an appeal prosecuted to the circuit court. The circuit court in turn ruled with the board of supervisors, and from the judgment of the circuit court denying the relief prayed for by the petitioners, they prosecute this appeal.

The allowances made by the board of drainage commissioners and the issuance of certificates of indebtedness are expressly authorized by the statute. The commissioners were expressly authorized to employ an engineer and an attorney, and the *per diem* of five dollars a day for the commissioners is fixed by statute. The commissioners acted within their jurisdiction, and their acts, unless appealed from or impeached for fraud, are binding upon the board of supervisors, under section 52 of the act mentioned. The statute expressly provides that in event the drainage district is not organized, the county drainage commissioners shall furnish to the board of supervisors of the county the amount of the certificates of indebtedness, and upon this presentation the board of supervisors are required to levy a sufficient tax. From the showing made, the board of supervisors ignored the plain provisions of the statute.

Judgment appealed from will be reversed, and the cause remanded.

*Reversed and remanded.*